9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RANDON WILLIAMS,<br><br>Defendant.<br><br>_____/ | Case: 2:26-cr-20245<br>Assigned To : Goldsmith, Mark A.<br>Referral Judge: Stafford, Elizabeth A.<br>Assign. Date : 4/29/2026<br>Description: IND USA V WILLIAMS<br><br>Violations:<br>18 U.S.C. §§ 1957, 2 (Counts 1-8) |

## INDICTMENT

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### A.    Relevant Individuals and Entities

1.    Randon WILLIAMS ("WILLIAMS") was a resident of the Eastern District of Michigan.

2.    The Romero Group was a limited liability corporation which purported to be a construction business. WILLIAMS was the Owner/CEO/President of The Romero Group.

3.    Step Ladder Construction ("Step Ladder") was a limited liability corporation which purported to be a construction business. WILLIAMS was the Owner/President/Member of Step Ladder.

1

4. The Randon Romero Williams Foundation was a corporation which purported to be a non-profit organization. In 2020 and 2021, WILLIAMS was the President of The Randon Romero Williams Foundation.

5. Huntington National Bank was a federally insured financial institution based in Ohio. Huntington National Bank participated as a lender in a program referred to as the Paycheck Protection Program ("PPP") operated by the United States Small Business Administration ("SBA"). As a PPP lender, Huntington National Bank was authorized to lend funds to eligible borrowers under the terms of the PPP. Huntington National Bank accepted PPP loan applications through its website and processed PPP loans to be originated and funded.

6. The Romero Group and Step Ladder maintained accounts at Huntington National Bank. WILLIAMS was the sole signatory on those accounts.

7. Community Choice Credit Union was a federally insured financial institution based in Michigan and was a participating PPP lender. Community Choice Credit Union accepted PPP loan applications through its website and processed PPP loans to be originated and funded.

8. The Randon Romero Williams Foundation maintained an account at Community Choice Credit Union. WILLIAMS was the sole signatory on that account.

B.     *The CARES Act and Paycheck Protection Program*

9.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to individuals and businesses suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

10.     To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, such as that the business was in operation and had employees for whom it paid salaries and payroll taxes. The PPP loan application also required the authorized representative to state the business's average monthly payroll and number of employees. These figures were used to calculate the amount of money the business was eligible to receive under the PPP. In addition, the business applying for a PPP loan was required to provide documentation showing its payroll expenses.

11.     PPP loan applications were electronically submitted to the lender for processing. Once approved, the lender funded the PPP loan using its own monies,

which were guaranteed by the SBA. The business received the PPP loan proceeds via an electronic funds transfer from the participating lender to a financial account under the control of the business. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees of the business, was transmitted by the lender to the SBA.

12.     In or around January 2021, SBA began another round of funding for PPP applications and allowed borrowers who had already received a first draw PPP loan to request a second draw.

13.     Additional verification was done for second draw PPP applications. The lender obtained necessary documents from the borrower such as, an application, supporting documents to support payroll costs, and documentation to prove a 25% reduction in revenues. The lender then reviewed these documents and submitted the information to the SBA for review and approval.

14.     PPP loan proceeds were required to be used by the business on certain permissible expenses – payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

## THE SCHEME TO DEFRAUD

15.    Beginning in or around April 2020, and continuing until in or around April 2022, a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises was devised in the Eastern District of Michigan and elsewhere.

16.    It was part of the scheme that applications and supporting documents for PPP loans and loan forgiveness containing materially false and fraudulent pretenses, representations, and promises were submitted to participating financial institutions, including Huntington National Bank and Community Choice Credit Union, and the SBA for several entities, including The Romero Group, Step Ladder Construction, and the Randon Romero Williams Foundation.

17.    It was further part of the scheme that the PPP loan proceeds were not used for permissible expenses, and their actual use was concealed.

18.    For the purpose of executing the scheme, writings, signs, and signals were caused to be transmitted by means of wire communications in interstate commerce.

## COUNTS 1 THROUGH 8
18 U.S.C. §§ 1957, 2
*Money Laundering*

19.    The general allegations, including all subparts, are included in this count.

5

20. On or about each date set forth below, in the Eastern District of Michigan and elsewhere, defendant WILLIAMS, aided and abetted by others, knowingly engaged in and attempted to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate commerce, knowing that such transaction involved criminally derived property of a value greater than $10,000, such property having been derived from a specific unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343:

| Count | Date | Amount | Transaction |
|---|---|---|---|
| 1 | 4/30/2021 | $20,569 | Paychex, Inc. Check #7737400053, deposited to Step Ladder's Chase account ending in x0572 |
| 2 | 5/6/2021 | $143,863 | Cashier's Check 00846910, purchased from the Foundation's CCCU account ending in x6458 |
| 3 | 7/3/2021 | $119,003 | Cashier's Check 00851124, purchased from the Foundation's CCCU account ending in x6458 |
| 4 | 4/30/2021 | $30,256 | Paychex, Inc. Check #7737300189, deposited into The Romero Group's Chase account ending in x5166 |
| 5 | 4/30/2021 | $22,579 | Paychex, Inc. Check #7737300184, deposited into Foundation's Chase bank account ending in x2106 |
| 6 | 4/30/2021 | $21,678 | Paychex, Inc. Check #7737300187, deposited into The Romero Trucking Corp's Chase bank account ending in x2768 |
| 7 | 4/30/2021 | $20,790 | Paychex, Inc. Check #7737300186, deposited into The Romero Enterprises' Chase bank account ending in x8080 |
| 8 | 4/30/2021 | $10,579 | Paychex, Inc. Check #7737300191, deposited into Randon Williams' Chase bank account ending in x8452 |

All in violation of Title 18, United States Code, Sections 1957, and 2.

## FORFEITURE ALLEGATIONS

### 18 U.S.C. § 982(a) and 28 U.S.C. § 2461

21.    The allegations contained in this Indictment are realleged and incorporated by reference to allege forfeiture under Title 18, United States Code, Section 982(a) and Title 28, United States Code, Section 2461(c).

22.    Upon conviction of the offenses charged in Counts 1-8 of this Indictment, in violation of Title 18, United States Code, Section 1957, defendant shall forfeit to the United States, under Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

23.    Substitute Assets: If the property described above as being subject to forfeiture, as a result of any act or omission of defendant:

(a)    Cannot be located upon the exercise of due diligence;

(b)    Has been transferred or sold to, or deposited with, a third party;

(c)    Has been placed beyond the jurisdiction of the Court;

(d)    Has been substantially diminished in value; or

(e)    Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 28, United States Code, Section 2461, to seek to

forfeit any other property of defendant up to the value of the forfeitable property described above.

24.     Money Judgment: Upon conviction of violating 18, United States Code, Section 1957, defendant shall be ordered to pay the United States a sum of money equal to the total amount involved in all money laundering transactions.

THIS IS A TRUE BILL.


*s/ Grand Jury Person*
GRAND JURY FOREPERSON


JEROME F. GORGON JR.
United States Attorney

*s/John K. Neal*
John K. Neal
Chief, Anti-Corruption Unit

*s/ Kelly Fasbinder*
Kelly Fasbinder
Assistant U.S. Attorney

*s/ Craig Wininger*
Craig Wininger
Assistant U.S. Attorney

| United States District Court<br>Eastern District of Michigan | **Criminal Case Co** | Case: 2:26-cr-20245<br>Assigned To : Goldsmith, Mark A.<br>Referral Judge: Stafford, Elizabeth A.<br>Assign. Date : 4/29/2026<br>Description: IND USA V WILLIAMS |

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to col

| **Companion Case Information** | **Companion Case Number:** |
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** |
| ☐ Yes          ☒ No | **AUSA's Initials:**   K.F. |

**Case Title:** USA v.  Williams

**County where offense occurred :**  Wayne County

**Check One:**     ☒ Felony          ☐ Misdemeanor          ☐ Petty

_____Indictment/_____Information --- **no** prior complaint.
__✓__Indictment/_____Information --- based upon prior complaint [**Case number:** 26-mj-30182          ]
_____Indictment/_____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____          **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

April 29, 2026
Date

*s/ Kelly Fasbinder*
Kelly Fasbinder
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 313-226-9520
E-Mail address: kelly.fasbinder@usdoj.gov

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.